FILED

2007 May-07  PM 12:22
U.S. DISTRICT COURT
N.D. OF ALABAMA

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ALABAMA
# NORTHEASTERN DIVISION

| | |
|---|---|
| LEWISTON HALL PLACE, LLC; ) | |
| ELIZABETH HALL; and RANDY ) | |
| LEWIS, ) | |
| ) | |
| **Plaintiffs,** ) | |
| ) | **Civil Action No. 06-S-2270-NE** |
| vs. ) | |
| ) | |
| TOLAR LEBATARD DENMARK ) | |
| ARCHITECTS, PLLC, ) | |
| ) | |
| **Defendant.** ) | |

## MEMORANDUM OPINION

This action is before the court on defendant's motion to compel arbitration, and to either dismiss or stay the proceedings in this case accordingly.[1]  In support of the motion, defendant relies on alternative dispute resolution provisions embedded within a larger contract between the parties.[2]  Plaintiffs contest the enforceability of the arbitration provisions.  For the reasons discussed below, defendant's motion must be granted.

## I.  BACKGROUND

Underlying this case is a contract dispute between an Alabama-based real estate

---

[1] Doc. no. 4 (Motion to Compel Arbitration).

[2] *Id*. at Ex. A (Architect Agreement).

group and a Mississippi-based architecture firm.  According to the complaint, plaintiffs — Lewiston Hall Place, LLC, and its principals, Elizabeth Hall and Randy Lewis — purchased just under five acres of real property in Foley, Alabama, with the intention of constructing an apartment community thereon.[3]  Plaintiffs engaged defendant, Tolar LeBatard Denmark Architects, PLLC, of Ocean Springs, Mississippi, to prepare plans for the development.[4]  To memorialize the terms of the arrangement, a form "Architect Agreement" was executed.[5]  As alluded to above, the Architect Agreement contains an alternative dispute resolution section, which reads in pertinent part as follows:

**§ 7.1  MEDIATION**

**§ 7.1.1**  Any claim dispute or other matter in question arising out of or related to this Agreement, except for the collection of fees due to the Architect, shall be subject to mediation as a condition precedent to arbitration or the institution of legal or equitable proceedings by either party.          . . . .

**§ 7.1.2**  The Owner and Architect shall endeavor to resolve claims, disputes and other matters in question between them by mediation, except for the collection of fees due to the Architect, which unless the parties mutually agree otherwise, shall be in accordance with the Construction Industry Mediation Rules of the American Arbitration Association currently in effect.  Request for mediation shall be filed in writing with the other party to this Agreement and with the American

---

[3] Doc. no. 1 (Complaint), ¶ 5.

[4] *Id*. at ¶ 6.

[5] *Id*.  *See also* doc. no. 4, Ex. A.

Arbitration Association.  The request may be made concurrently with the filing of a demand for arbitration but, in such event, mediation shall proceed in advance of arbitration or legal or equitable proceedings, which shall be stayed pending mediation for a period of 60 days from the date of filing, unless stayed for a longer period by agreement of the parties or court order.

> . . . .

## § 7.2  ARBITRATION

**§ 7.2.1**  Any claim, dispute or other matter in question arising out of or related to this Agreement shall be subject to arbitration.  Prior to arbitration, the parties shall endeavor to resolve disputes by mediation in accordance with Section 7.1.  Arbitration shall not be used for dispute resolution when pertaining to the collection of Architectural Fees due.

**§ 7.2.2**  Claims, disputes and other matters in question between the parties that are not resolved by mediation shall be decided by arbitration which, unless the parties mutually agree otherwise, shall be in accordance with the Construction Industry Arbitration Rules of the American Arbitration Association currently in effect.  The demand for arbitration shall be filed in writing with the other party to this Agreement and with the American Arbitration Association.

**§ 7.2.3**  A demand for arbitration shall be made within a reasonable time after the claim, dispute or other matter in question has arisen.  In no event shall the demand for arbitration be made after the date when institution of legal or equitable proceedings based on such claim, dispute or other matter in question would be barred by the applicable statute of limitations.[6]

Despite what the provisions say about mediation being a condition precedent

to the institution of legal action, clearly the case is before the court, and yet the record

---

[6] Doc. no. 4, Ex. A, §§ 7.1 - 7.2.3.

does not indicate that mediation has occurred.  Nor, for that matter, do the parties

state whether any demands were filed in accordance with the Architect Agreement.

Regardless, it is obvious that the dispute has not proceeded to arbitration:  hence,

defendant's request for the court's assistance in that regard.

## II.  DISCUSSION

The Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 *et seq.*, establishes a federal

policy favoring arbitration and a body of substantive law governing the area.  *See*,

*e.g.*, *Shearson / American Express*, *Inc. v. McMahon*, 482 U.S. 220, 226 (1987);

*Moses H. Cone Memorial Hospital v. Mercury Construction Corp.*, 460 U.S. 1, 24-25

(1983) (holding that "any doubts concerning the scope of arbitrable issues should be

resolved in favor of arbitration").  The FAA was enacted "to reverse the longstanding

judicial hostility to arbitration agreements."  *Gilmer v. Interstate / Johnson Lane*

*Corp.*, 500 U.S. 20, 24 (1991).  To effect that purpose, section 4 of the FAA provides

a procedure for compelling enforcement of arbitration agreements in cases where one

party refuses to comply:  the proponent of arbitration may petition any district court

having jurisdiction to order compliance, in which case the court must order arbitration

"upon being satisfied that the making of the agreement for arbitration or the failure

to comply therewith is not in issue."  9 U.S.C. § 4.

Not surprisingly, plaintiffs and defendant disagree as to whether the making

of this particular agreement, or failure to comply therewith, is "in issue." Plaintiffs argue that this court should not compel arbitration because the terms of the agreement are unconscionable and factually inapplicable. Under the FAA, a written agreement to arbitrate a dispute that relates to a transaction involving interstate commerce is valid and enforceable in either state or federal court, "save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2 (2004).[7] Thus, while federal law mandates enforcement of valid arbitration agreements, the formation, existence, and interpretation of a contract to arbitrate is governed by state law. *See First Options of Chicago*, *Inc. v. Kaplan*, 514 U.S. 938, 944 (1995). *See also* 28 U.S.C. § 1652 ("The laws of the several states . . . shall be regarded as rules of decision in civil actions in the courts of the United States, in cases where they apply.").

## A.    Choice of Law

Before reaching the substantive analysis of the arbitration dispute, the court must confront two choice of law questions. The Architect Agreement at issue here

---

[7] There is no dispute in this case that the Architect Agreement is in writing; further, it appears undisputed that the contract at issue was negotiated across state lines and involved the exchange of substantial sums of money between citizens of different states. *See generally Caley v. Gulfstream Aerospace Corp.*, 428 F.3d 1359, 1368-70 (11th Cir. 2005) (discussing the FAA's requirements of a written agreement and a transaction involving interstate commerce); *Jenkins v. First American Cash Advance of Georgia*, *LLC*, 400 F.3d 868, 874 (11th Cir. 2005) ("The FAA's broad interstate commerce requirement is satisfied in this case. The lending transactions were between Jenkins, a Georgia resident, and FNB, a national bank located in South Dakota.").

provides that it "shall be governed by the law of the principal place of business of the Architect, . . . [which is] Ocean Springs, Mississippi."[8]  The parties apparently agree that this clause renders Mississippi law applicable, insofar as the resolution of this case depends on state law.  Even so, since this court's jurisdiction is based on diversity, *see* 28 U.S.C. § 1332(a)(1), it must apply the forum state's choice of law rules when determining whether it is appropriate to honor this contractual stipulation.  *See*, *e.g.*, *Klaxon v. Stentor Electric Manufacturing Company*, 313 U.S. 487, 496 (1941).  This is a relatively straightforward inquiry — Alabama law provides that, when the parties expressly choose a particular state's law to govern their contract, that choice generally should be given effect.  *See*, *e.g.*, *Cherry*, *Bekaert & Holland v. Brown*, 582 So. 2d 502, 506-507 (Ala. 1991); *Ex parte Owen*, 437 So. 2d 476, 481 (Ala. 1983); *Watkins Company v. Hill*, 108 So. 244, 245 (Ala. 1926).  Moreover, there is no palpable difference between the contract laws of Mississippi, on the one hand, and Alabama on the other.  Accordingly, Mississippi law will be applied where appropriate.

The FAA is a federal statute, however, and this case necessarily depends in part on the application of federal precedent.  The Northern District of Alabama is situated within the Eleventh Circuit, 28 U.S.C. §§ 41, 81, and this court is therefore bound

---

[8] Doc. no. 4, Ex. A, § 9.1.

only by the decisions of the Supreme Court and the United States Court of Appeals for the Eleventh Circuit on issues of federal law. *See*, *e.g.*, *Hialeah*, *Inc. v. Florida Horsemen's Benevolent & Protective Association*, *Inc.*, 899 F. Supp. 616, 623 (S.D. Fla. 1995) ("A decision of a sister circuit court of appeals is not binding precedent on a district court in another circuit, but is merely persuasive authority.") (citing *Generali v. D'Amico*, 766 F.2d 485, 489 (11th Cir. 1985) (holding that "authority from one circuit of the United States Court of Appeals is not binding upon another circuit")).[9]

That fact notwithstanding, and without any explanation at all, both parties pepper their briefs with precedent from the United States Court of Appeals for the Fifth Circuit, and district courts within that Circuit. Indeed, not a single Eleventh Circuit decision is cited. To the extent this might be attributable to some unstated belief that the choice of law clause within the Architect Agreement incorporates, as binding on this court, the federal precedent of the circuit court embracing the State of Mississippi, neither party has made any argument or produced any cases to support such a proposition. It appears, in any case, that the Eleventh and Fifth Circuits have not espoused radically different interpretations of the FAA, but even so, in the

---

[9] However, in *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (*en banc*), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down *prior to the close of business on September 30*, *1981*.

absence of clearer contractual language or case law indicating that it would be appropriate to elevate Fifth Circuit decisions over Eleventh Circuit authority, the court will not do so.  *Cf. Satellite Financial Planning Corp. v. First National Bank of Wilmington*, 633 F. Supp. 386, 393-94 (D. Del. 1986) ("The Court chooses not to face the possibility of having to disregard the established law of this District, or the anomaly of the Court of Appeals for the Third Circuit having to disagree with its own precedent on appeal because it differs from that of the District of Maryland and the Fourth Circuit.").

**B.    Arguments Against Arbitration**

Plaintiffs muster two arguments in opposition to arbitration.  One theory is that the alternative dispute resolution provisions do not apply to this case because "the plain terms of such provision[s] state that disputes regarding the collection of architectural fees due shall not be arbitrated."[10]   Contrary to plaintiffs' proffered conceptualization, this is simply not an action "for the collection of fees due to the Architect,"[11] nor is it a legal proceeding "pertaining to the collection of Architectural Fees due."[12]   Instead, plaintiffs filed a complaint seeking damages for breach of contract and negligence after defendant allegedly derailed their community

---

[10] Doc. no. 8 (Response in Opposition to Motion to Compel Arbitration), p. 5.

[11] Doc. no. 4, Ex. A, § 7.1.1.

[12] *Id*. at § 7.2.1.

development project.[13]   True, the complaint mentions that defendant "continually sends invoices to Plaintiff[s] demanding payment of amounts disputed by Plaintiff[s] and in contradiction to their agreement to be paid in full upon closing of the construction loan"[14] — but plaintiffs are not seeking to collect architectural fees (indeed, plaintiffs are not the architects), and defendant has not filed any counterclaim to that effect.

Plaintiffs' other contention is that the alternative dispute resolution provisions specifically, and the Architect Agreement generally, are unconscionable.   "The Supreme Court has recognized that 'generally applicable [state law] contract defenses, such as fraud, duress, or unconscionability, may be applied to invalidate arbitration agreements.'" *Jenkins v. First American Cash Advance of Georgia*, *LLC*, 400 F.3d 868, 875 (11th Cir. 2005) (quoting *Doctor's Associates*, *Inc. v. Casarotto*, 517 U.S. 681, 686 (1996)).   *See also Bess v. Check Express*, 294 F.3d 1298, 1306 (11th Cir. 2002) (same).   However, "unless the challenge is to *the arbitration clause itself*, the issue of the contract's validity is considered by the arbitrator in the first instance." *Buckeye Check Cashing*, *Inc. v. Cardegna*, 546 U.S. 440, 445-46 (2006) (emphasis supplied).   *See also Jenkins*, 400 F.3d at 877 (observing that when a

---

[13] *See* doc. no. 1, ¶¶ 16, 20.

[14] *Id*. at ¶ 14.

party's claims of "'adhesion, unconscionability, . . . and lack of mutuality of obligation pertain to the contract as a whole, and not to the arbitration provision alone, then these issues should be resolved in arbitration'") (quoting *Benoay v. Prudential-Bache Securities, Inc.*, 805 F.2d 1437, 1441 (11th Cir. 1986)). Accordingly, to the extent that plaintiffs' unconscionability arguments are predicated on the fact that *other sections* of the Architect Agreement purport to shorten all applicable statutes of limitation, limit recoverable damages, and force plaintiffs to waive all causes of action against defendant, the court is powerless to consider them. *See*, *e.g.*, *Buckeye*, 546 U.S. at 445-46.

Plaintiffs also maintain, however, that the arbitration provisions are substantively unconscionable because "both the mediation and arbitration sections of the Architect Agreement allow [defendant] to go to court to recover damages from Plaintiffs, but limit Plaintiffs to either mediation or arbitration."[15] Since this theory attacks the arbitration provisions specifically, the court must test it under Mississippi law. *See First Options of Chicago*, 514 U.S. at 944. The Mississippi Supreme Court has defined unconscionability as the "absence of meaningful choice on the part of one of the parties [to a contract], *together with* contract terms which are unreasonably favorable to the other party." *Entergy Mississippi, Inc. v. Burdette Gin Company*, 726

---

[15] Doc. no. 8, p. 3.

-10-

So. 2d 1202, 1207 (Miss. 1998) (emphasis supplied).  While this statement of law appears to require both substantive *and* procedural defects as prerequisites to a finding of unconscionability, more recent decisions of the Mississippi courts clearly indicate that substantive defects alone are sufficient to render a contractual clause unenforceable under this doctrine.  *See, e.g., Covenant Health Rehab of Picayune, LP v. Brown*, 949 So. 2d 732, 738 (Miss. 2007) ("Contracts comprised of terms oppressive in character may be found unconscionable."); *Equifirst Corp. v. Jackson*, 920 So. 2d 458, 463 (Miss. 2006) (recognizing the distinction between procedural and substantive unconscionability, and implicitly recognizing that either will suffice to render a contract or clause enforceable); *Pitts v. Watkins*, 905 So. 2d 553, 555 (Miss. 2005) ("Because this Court finds that the arbitration clause and the limitation of liability clause are substantively unconscionable, *these issues are dispositive* of the case[.]") (emphasis supplied).

In *Pitts*, the Mississippi Supreme Court confronted an arbitration clause strikingly similar to the one at issue here:

> The arbitration clause in the case sub judice is substantively unconscionable.  The arbitration clause provides an avenue for Watkins to pursue his claims in a court of law, while requiring the Pittses to arbitrate.  The arbitration clause in the Inspection Agreement reads as follows:  "Any dispute concerning the interpretation of this Agreement or arising from the Inspection and Report *(unless based on payment of fee)* shall be resolved by arbitration." (emphasis added).  By signing the

agreement, Pitts agreed to pay $265 for the performance of the
Inspection services.  If Pitts were to breach the contract by failing to pay
the inspection fee to Watkins, Watkins would be able to pursue his claim
in a court of law. . . .   This arbitration clause is clearly one-sided,
oppressive, and therefore, substantively unconscionable.

*Pitts*, 905 So. 2d at 555-56 (emphasis in original).  *Accord Covenant Health Rehab*,

949 So. 2d at 739 (citing *Pitts* and upholding the lower court's decision to strike a

very similar clause as substantively unconscionable).

The arbitration clause in the present case is, for all material purposes,

indistinguishable from the ones at issue in *Pitts* and *Covenant Health Rehab*.[16]  While

defendant argues that another decision of the Mississippi Supreme Court, *Vicksburg*

*Partners*, *LP v. Stephens*, 911 So. 2d 507 (Miss. 2005), is better reasoned, that case

is not factually analogous to the present dispute.  The arbitration clause that was

upheld in pertinent part in *Vicksburg* did not require one party to submit to arbitration

while allowing the other party to resort to traditional judicial remedies.  Rather, the

clause "merely provide[d] for a mutually agreed-upon forum for the parties to litigate

their claims and [was] benign in its effect on the parties' ability to pursue potential

actions."  *Vicksburg*, 911 So. 2d at 522.   Indeed, the court in *Vicksburg* singled out

*Pitts* for distinction, noting that "[t]he language in the arbitration clause in today's

---

[16] *See* doc. no. 4, Ex. A, § 7.2.1 ("Any claim, dispute or other matter in question arising out
of or related to this Agreement shall be subject to arbitration. . . . Arbitration shall not be used for
dispute resolution when pertaining to the collection of Architectural Fees due.").

case pales in comparison to the oppressive language contained in the arbitration clause in *Pitts*." *Id*. at 525.  Consequently, *Vicksburg* is of little assistance to defendant in this context.  The other cases cited by defendant are not from the Supreme Court of Mississippi and were, in any case, decided prior to the decisions in *Pitts* and *Covenant Health Rehab*.  Accordingly, this court holds that the arbitration clause is substantively unconscionable under Mississippi law to the extent that it permits defendant to pursue claims for recovery of fees in courts of law, but restricts plaintiffs to binding alternative dispute resolution protocols.

## C.     Remedy

The fact that the clause is partially unconscionable does not necessarily mean that the entire arbitration agreement is unenforceable.  Instead, "Mississippi case law . . . holds that if a court strikes a portion of an agreement as being void, the remainder of the contract is binding."  *Russell v. Performance Toyota*, *Inc.*, 826 So. 2d 719, 725 (Miss. 2002).  *See also* Miss. Code § 75-2-302(1) ("If the court as a matter of law finds the contract or any clause of the contract . . . unconscionable . . . the court may refuse to enforce the contract, or it may enforce the remainder of the contract without the unconscionable clause, or it may so limit the application of any unconscionable clause as to avoid any unconscionable result."); *Covenant Health Rehab*, 949 So. 2d at 741 ("We choose to enforce the remainder of the contract without the

unconscionable clause."); *Vicksburg*, 911 So. 2d at 524 (noting that "courts have the ability to strike terms which render an otherwise valid contractual arrangement unconscionable").

As written, the relevant part of the arbitration clause in the present case states as follows:

> **§ 7.2.1**  Any claim, dispute or other matter in question arising out of or related to this Agreement shall be subject to arbitration.  Prior to arbitration, the parties shall endeavor to resolve disputes by mediation in accordance with Section 7.1.  *Arbitration shall not be used for dispute resolution when pertaining to the collection of Architectural Fees due.*[17]

Given the structure of this paragraph, the court can easily strike the offensive (italicized) language, and "enforce the remainder of the contract without the unconscionable clause."  Miss. Code § 75-2-302(1).  *See also Covenant Health Rehab*, 949 So. 2d at 739 (holding that similar provisions "were properly stricken by the trial court in accordance with *Pitts*").

The mediation clause contains comparable language, but that clause is not the focus of the court's attention; the FAA applies to arbitration agreements, not mediation agreements.  *See*, *e.g.*, *Advanced Body Care Solutions LLC v. Thione International, Inc.*, No. 06-81128-CV, 2007 WL 1246024, at * 6 (S.D. Fla. April 30, 2007) (holding that "an agreement to mediate is generally not susceptible to FAA

---

[17] Doc. no. 4, Ex. A, § 7.2.1 (boldface emphasis in original; other emphasis supplied).

enforcement"); *Lynn v. General Electric Company*, No. 03-2662-GTV-DJW, 2005 WL 701270, at * 6 (D. Kan. Jan. 20, 2005) (concluding that "the mediation process is much too distinct from the arbitration process to constitute arbitration under the Federal Arbitration Act").

While the Architect Agreement specifies that mediation is a condition precedent to arbitration, the question of whether the parties have satisfied all conditions precedent is an issue to be decided by the arbitrator in the first instance, not this court. *See Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 83, 85 (2002) (explaining that "'whether prerequisites such as time limits, notice, laches, estoppel, *and other conditions precedent* to an obligation to arbitrate have been met, are for the arbitrators to decide'") (emphasis supplied) (internal citation omitted).[18]

### III.  CONCLUSION

In accordance with the foregoing, defendant's motion to compel arbitration will

---

[18] *See also Klay v. United Healthgroup, Inc.*, 376 F.3d 1092, 1107 (11th Cir. 2004) (recognizing that the Court in *Howsam* adopted "the approach embodied in the Revised Uniform Arbitration Act of 2000" and held that "'whether prerequisites such as time limits, notice, laches, estoppel, and other conditions precedent to an obligation to arbitrate have been met, are for the arbitrators to decide'") (quoting *Howsam*, 537 U.S. at 84-85).  The court recognizes that the *Howsam* opinion clashes with an earlier Eleventh Circuit decision, *Kemiron Atlantic, Inc. v. Aguakem International, Inc.*, 290 F.3d 1287 (11th Cir. 2002), which upheld the district court's refusal to compel arbitration on the ground that the parties had not satisfied an explicit condition precedent to arbitration.  *See Kemiron*, 290 F.3d at 1291.  Because the result in *Kemiron* and the rule announced in *Howsam* cannot be read in a manner that renders them consistent with one another, however, the court applies the logic of *Howsam* here.  *See, e.g.*, U.S. Const. Art. III, § 1; *Glassroth v. Moore*, 335 F.3d 1282, 1302 n.6 (noting that "all state and federal courts are bound to follow decisions of the United States Supreme Court").

be granted.  An appropriate order will be entered contemporaneously herewith.

DONE this 7th day of May, 2007.

United States District Judge